Am. & Eng. Encyc. of Law, 714; O. J. Gude Co. v. Farley, 25 Misc. Rep. 502, 54 N. Y. Supp. 998. There was, as thus appears, no failure of proof on the part of the plaintiff; but, even if he had failed to prove his case, and ought to have been nonsuited, the defendant was not entitled to have a verdict directed in her favor, which would be a final bar to the plaintiff's right of action. Briggs v. Waldron, 83 N. Y. 582, 586; Baylie, Tr. Pr. (2d Ed.) 324.

The trial justice likewise erred in taking the case from the jury upon the ground that the evidence preponderated in favor of the defendant. Assuming, without deciding, such to be the fact, the record nevertheless discloses, as we have seen, a conflict of testimony upon material questions of fact, which was for the jury, and not for the court, to determine, and hence the direction of a verdict was not warranted. Schillinger v. McGarry, 25 Misc. Rep. 745, 55 N. Y. Supp. 673; Chambers v. Goldklang, 31 Misc. Rep. 247, 64 N. Y. Supp. 36; McDonald v. Metropolitan St. R. Co., supra. As was said by the court in the last-cited case (page 70, 167 N. Y., page 283, 60 N. E.):

"Whenever a plaintiff has established facts or circumstances which would justify a finding in his favor, the right to have the issue of fact determined by a jury continues, and the case must ultimately be submitted to it."

There were other points urged by the appellant's counsel, but they may be presented upon another trial, and need not be passed upon. The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to appellant to abide event. All concur.

---

(86 App. Div. 188.)

SMITH v. NEW YORK, C. & ST. L. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1903.)

1. SERVANT'S INJURIES—SAFE APPLIANCES—FAILURE TO INSPECT—EVIDENCE—SUFFICIENCY.

In an action against a railroad for injuries to a brakeman, caused by the bursting of a rubber air hose, evidence examined, and *held* sufficient to justify a finding that defendant was guilty of negligence in failing to make a reasonable inspection of the hose.

2. SAME—ASSUMPTION OF RISK.

Where injuries to a railroad employé, caused by a defective hose, would not have occurred if the railroad had made a suitable inspection of such hose, the railroad was not relieved from liability for such injury by the fact, well known to the servant, that hose suitably inspected frequently burst, causing similar accidents.

3. SAME—INSPECTION OF APPLIANCES—NEGLIGENCE OF FELLOW SERVANTS.

The fact that a railroad delegated the duty of inspection of appliances to a servant does not relieve it from liability for injuries caused to another servant by defective appliances insufficiently inspected.

Adams, P. J., dissenting.

Appeal from Trial Term, Erie County.

Action by Albert E. Smith against the New York, Chicago & St. Louis Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

¶ 3. See Master and Servant, vol. 34, Cent. Dig. § 409.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-
LIAMS, and HISCOCK, JJ.

Tracy C. Becker, for plaintiff.

L. L. Babcock, for defendant.

McLENNAN, J. The plaintiff, who was 24 years of age, and an
experienced brakeman, having been employed by the defendant in
that capacity for about 3 years, was injured on the 13th day of Oc-
tober, 1900, near Swanville, Pa., on the line of defendant's road,
while engaged as brakeman in running a freight train consisting of
an engine, about 54 freight cars, and a caboose, from Conneaut, in
the state of Ohio, to the city of Buffalo. The first 20 cars, counting
from the engine, were equipped with the ordinary air brakes. The
injury resulted from the bursting of a rubber air hose attached to
the rear of the seventeenth car from the engine, which car belonged
to the Atlanta & West Point Railroad Company of Georgia. It had
come over the road of the Illinois Central Railroad, and was de-
livered by that corporation to the defendant for transportation to
Stony Island, the western terminal of its railroad, on the 2d day
of October, 1900. The bursting of the hose permitted the brakes
upon the freight train to become set, and caused the train, which
was then going between 12 and 15 miles per hour, to stop suddenly.
As a result, the plaintiff, who was sitting in the caboose, with his
feet upon a bench or locker, lost his balance, was thrown against a
desk, his head striking the corner, and he sustained the injuries for
which he seeks to recover in this action.

The plaintiff was permitted to recover in the court below upon the
theory that the hose which burst was defective, and not suitable for
use; that such defect could have been discovered by reasonable in-
spection; that such inspection was not made by the defendant, and
therefore it was negligent in that regard; and that such negligence
caused the accident which resulted in injury to the plaintiff. The
pieces of rubber hose, each about a yard long, between cars supplied
with the air-brake system, are a simple device, and are familiar to
all. It is apparent, however, that they constitute an important and
essential part of the equipment of the train, and to a very large extent
the safety of its operation depends upon whether or not such ap-
pliances are suitable for the purpose intended; quite, or nearly as
much, as the wheels or other parts of the running gear of the cars.
The general proposition of law that a master is under obligation to
make reasonable effort to furnish his employé with reasonably safe
appliances with which to perform the task required of him, and
that, if he fails to perform such duty, and such employé sustains in-
jury by reason of the master's omission in that regard, the employé
may recover from the master the damages sustained on account of
such injuries, is too well settled to require the citation of authority.
It is equally well settled that the only conditions which will prevent
a recovery by the employé in such case is that he knew, or, in the
exercise of ordinary care and prudence ought to have known, that
such appliances were unsafe, and with such knowledge voluntarily
continued to use the same, or that he himself was guilty of negligence

in their use, which negligence on his part contributed to the injury.

The question presented by this appeal is whether or not the evidence fairly justified the jury in finding that the plaintiff was within the rule adverted to. This inquiry involves an examination of the facts, some of which are not controverted. For instance, it established beyond dispute that the natural and ordinary result of the breaking of a hose like the one in question, on a moving train, is to bring such train to a sudden stop, which will cause a severe jar in all parts of the train, if nothing more serious happens; that such sudden stopping is dangerous to the employés engaged in operating such train; that hose like the one in question, in order to perform the function for which it was intended, must be of sufficient strength to withstand an air pressure of 70 pounds, that being the amount of pressure required to operate the air brake; that whether or not a hose is capable of withstanding such pressure and suitable for use can, practicably, only be determined by subjecting it to such pressure, especially after it has been in use for some time; that the injury which the plaintiff sustained resulted from the breaking of the hose. We think it may also be said that the jury was justified in finding from the evidence that the plaintiff was not guilty of negligence by reason of anything which he did or omitted to do while in the caboose. Also, the defendant well knew that a hose like the one in question was liable to burst; knew of the serious consequences which were likely to follow; and knew that the only way to avert, even partially, such consequences, was to carefully inspect the hose of any train, and test it by subjecting it to pressure of at least 70 pounds before such train set out upon its journey. Was such test in fact made by the defendant? When the car to which the hose in question was attached was delivered to the defendant at Stony Island, its car inspector stationed at that place discovered that the car was in a defective condition; that the roof, end, and other parts had been broken. He testified that upon examining the car he discovered such defects, and sent it to the shop to have it repaired. He also stated that he then examined the hose, and found that it was in good condition; but it appears that the only examination which he made of it was to look at or handle it. The jury was amply justified in finding that at that time, or at any time while the car was at Stony Island, and before it was started east over defendant's road, the air hose was not tested by applying air pressure to it. This is also true of all the other tests which the defendant claims it made of the hose in question prior to the accident, and, as we have seen, that was the only method by which it could be determined whether or not it was suitable for use. It appears that the pressure test may be made in one of two ways, either by applying the pressure direct from the engine after all the cars are coupled, or applying such pressure from an independent power plant constructed for that purpose, which is in use on many of the railroads of the country, and which apparently is the much better and surer method of detecting defective or unsuitable hose. Concededly, the hose in question was not tested by the last method, and we think it was for the jury to say, upon all the evidence, whether or not it was tested by the other. We therefore reach the conclusion,

that upon all the evidence the jury was justified in finding that the hose in question was not tested by the defendant, prior to the accident, in such manner as would probably have disclosed any defect therein, if such defect in fact existed.

A rule of the defendant (No. 182), which was put in evidence, and of which the plaintiff had knowledge, requires, in effect, that conductors must know that the cars in their trains have been inspected, and that the air brakes, air signal, and steam-heating apparatus are in proper working order. They are required to examine the air brakes, couplings, safety chains, signal cards, etc., so that they may know that everything is fit to run, and they must require the trainmen to aid them in making such examination. By another rule (No. 239) the trainmen are placed under the direction of the conductor, and it is expressly made their duty to assist the conductor in inspecting cars. As applied to the inspection of hose, it appears that the examination or inspection referred to in the rule, as interpreted by long-continued use and custom on defendant's road, meant only a cursory or casual observation of the hose, and listening to ascertain whether any air was then escaping; in other words, such an examination as would disclose whether or not the hose had already burst. Such an examination was made by the trainmen going along the side of the train, looking at all the parts, going between the cars, looking at all the appliances for coupling the same, and listening for escaping air. In effect, they were to make an observation of the entire train, of all its appliances, and, if anything connected therewith was discovered to be out of order, to report the same. The evidence shows—and it is apparent—that such an examination of hose would not ordinarily disclose any defect unless it had then actually burst and air was escaping. Such an examination was made of the train in question by the plaintiff and his associate trainmen, and according to their testimony it failed to disclose any defect in the hose in question. After the accident the hose was examined, and there is evidence tending to show that it was defective; that it was soft and spongy, and not suitable for use; but that such condition could not have been discovered by the plaintiff or by his associates by any examination which they could have made while the hose was in use. The hose in question was old, had been in use from 2 to 3 years, and the ordinary life of such an appliance is from 18 months to 5 years. This was plainly indicated by a series of numbers stamped in the rubber, and the evidence tends to show that such rubber hose deteriorates with age, whether in use or not. These facts might properly have been considered by the jury in determining whether the defendant was guilty of negligence in failing to subject the hose in question to the pressure test. Upon all the evidence we conclude that the jury was justified in finding that the defendant was guilty of negligence because of its failure to make a reasonable inspection of the hose in question, and that such negligence was the proximate cause of the accident.

It appears that the hose upon cars run over defendant's road, and in fact over all other railroads, frequently bursts, even that which has been tested by the most approved methods, and it is the custom

to carry in the caboose of each train a supply for use by the train-men in case of necessity. All this was well known to the plaintiff, and it is urged that by reason of that fact it should be held that the, bursting of a hose was a risk of his employment, which he assumed. The proposition is untenable. If we are right in concluding that the jury was justified in finding that the accident which resulted in injury to the plaintiff would not have happened if the defendant had made a reasonable inspection of the hose in question, that it did not make such inspection, and that it was guilty of negligence because of its failure so to do, the defendant is not relieved from liability because of the fact that frequently hose in use upon its trains which was properly inspected had burst, and caused accidents similar to the one here being considered. In the latter case the master would not be liable, because not guilty of negligence, and the employé assumes the con-sequences of all injury which comes to him in his employment, not the result of such negligence. He does not, however, assume risks which result from the master's negligence, although similar risks may be an incident of the employment, and often result in accident when the master is entirely free from negligence.

As we have seen, the jury was justified in finding that the defend-ant failed to make a reasonable. inspection of the hose in question, because of its failure to subject it to the pressure test, and was, therefore, negligent, and, if so, it is no defense that it delegated the performance of that duty, with which concededly the plaintiff had nothing to do, to another of its employés. It was still its duty, and any negligence in its performance was the negligence of the defend-ant, and not the negligence of a co-employé of the plaintiff. Sutter v. New York Central & Hudson River R. R. Co., 79 App. Div. 362, 79 N. Y. Supp. 1106.

The exceptions to which attention has been called we think are not of sufficient importance to require a reversal of the judgment. A careful examination of the record and of the questions involved leads us to conclude that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur, except ADAMS, P. J., who dissents.