NAMAN J. ABOUNADER, Respondent, *v.* STROHMEYER & ARPE COMPANY, Appellant.

**Pleading — cause of action — false labels — sufficiency of complaint in action to recover under the Farms and Markets Law for false labeling — intent of Legislature to give right of action — legislative intent that one who sold containers with false labels should be responsible to ultimate purchaser though there was no privity between them — purchaser may recover legal expenses in defending himself from prosecution for having falsely labeled goods in his possession.**

1. Even though under the provisions of section 196 of the Farms and Markets Law (Cons. Laws, ch. 69) an action for breach of provisions of the statute might be based upon warranty, where, in such an action, no reference is made to this section in support of the complaint which sets forth with fair accuracy and completeness the facts upon which plaintiff relies, the terms " warrant " and " warranty " used therein, when interpreted in the light of all of its allegations, are to be construed as alleging that the defendants stated or represented for the purposes of sale, within the statute, that containers held a certain amount, and the provisions of section 196 do not tend to create any inference that the pleader was trying to state a cause of action in warranty rather than one based generally on a violation of provisions of the statute.

2. In the absence of an express provision in the statute giving to an ultimate purchaser of falsely labeled containers, however remote, a right of action against the person who violated the statute by marketing them with false labels, the question becomes one of the intent of the Legislature in passing the statute. If it was its intent to impose the duty defined in the provisions of the statute for the benefit of the general public and any member thereof who might be misled by false labels, then a right of action would be raised in behalf of such purchaser who had been injured by violation of the duty.

3. In the enactment of the statute in question, as a whole, it clearly appears that the Legislature had in mind the purpose of protecting members of the public from fraud and misrepresentation in the character of foods and also in the quantities of foods and allied commodities which they might purchase, and the provision of section 196 indicates an intent that the duty and responsibility of a jobber or manufacturer should go with the article which he was labeling and marketing and follow it down through the line to the member of the public who finally purchased it for consumption or use. The statute, therefore, confers a right of action upon an ultimate purchaser against the person who originally prepared for market and sold containers with false labels or statements of their contents, even though there were intermediate dealers and no privity between the last purchaser and the first vendor. The fact that penalties are ordained for violations furnishes no argument against this conclusion. Nor is any element of ordinary negligence essential. Violation becomes actionable default.

4. In such an action plaintiff should be allowed to establish, if he can, his expenditures for legal services employed for the purpose of extricating him from a liability for penalties based on the fact that he had falsely labeled containers in his possession. His reasonable expense in that respect became a proximate result of defendant's violation of the statute.

*Abounader* v. *Strohmeyer & Arpe Co.*, 217 App. Div. 43, affirmed.

(Submitted September 28, 1926; decided November 16, 1926.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 5, 1926, which affirmed an order of Special Term denying a motion for a dismissal of the complaint.

The following questions were certified: " 1. Does the amended complaint herein set forth facts sufficient to constitute a cause of action? 2. Can plaintiff be permitted

under this amended complaint to recover damages sustained by reason of defendant's alleged violations of a duty or duties imposed upon defendant by the Farms and Markets Law?   3. Should the motion to dismiss the amended complaint upon the pleadings and the admissions of the plaintiff, have been granted? "

*George Gray Zabriskie* for appellant.   The amended complaint attempts to state a cause of action on the sole ground of breach of warranty, either under the Sales Act or the Farms and Markets Law, and the papers before the court show that even though a breach of statutory duty is also involved, plaintiff has no such cause of action. *(Chysky* v. *Drake Bros.,* 235 N. Y. 468; *Singer* v. *Knott,* 237 N. Y. 110; *Manhattan Co.* v. *Kaldenberg,* 165 N. Y. 1; *Wilson* v. *Israel,* 227 N. Y. 423; *McGaffin* v. *Cohoes,* 74 N. Y. 387; *Matter of Tilden,* 98 N. Y. 434; *Behan* v. *People,* 17 N. Y. 516; *Spencer* v. *Met. Board of Works,* 22 Ch. Div. 152.; The courts below have extended the doctrine of civil liability for violation of a penal statute beyond the permissible limits.   (*Van Kleeck* v. *Le Roy,* 37 Barb. 544; 4 Abb. Dec. 479; *Reno* v. *Bull,* 226 N. Y. 546; *St. L. & S. F. R. R.* v. *Conarty,* 238 U. S. 243; *Loucks* v. *Standard Oil Co.,* 224 N. Y. 99; *People* v. *Wright,* 19 Misc. Rep. 135; *People* v. *McDermott-Bunger Dairy Co.,* 38 Misc. Rep. 365; *Kennehan* v. *City of N. Y.,* 162 App. Div. 364; *Leach* v. *Auwell,* 154 App. Div. 170; *Manhattan Bank Co.* v. *Kaldenberg,* 165 N. Y. 1; *People* v. *Briggs,* 193 N. Y. 457.)   The complaint fails to allege any damage to the plaintiff which could be recovered under any theory.   (*Slingerland* v. *Bennett,* 66 N. Y. 611; *Mattlage* v. *N. Y. El. Ry. Co.,* 17 N. Y. Supp. 836; *Armstrong* v. *Percy,* 5 Wend. 535; *Schnurmacher* v. *Kennedy,* 88 N. Y. Supp. 943; *Flett* v. *Royal Bank of Canada,* 207 App. Div. 273; 239 N. Y. 543; *Reno* v. *Bull,* 226 N. Y. 546; *Schile* v. *Brokhahus,* 80 N. Y. 614; *Messmore* v. *N. Y. Shot & Lead Co.,* 40 N. Y. 422; *Moran*

v. *Standard Oil Co.,* 211 N. Y. 187; 2 Sutherland on Damages, 1165; *Linden* v. *Graham,* 1 Duer, 670; *Reporters Assn.* v. *Sun Assn.,* 186 N. Y. 437.)

*R. S. Johnson* for respondent. The complaint must be liberally construed, and if it can be implied from its allegations by reasonable and fair intendment that an action at law or in equity is set forth, it is sufficient. (*Emanuel* v. *Walter,* 138 App. Div. 818; *Wetmore* v. *Porter,* 92 N. Y. 76; *Sage* v. *Culver,* 147 N. Y. 241; *Superior Brassiere Co., Inc.,* v. *Zimetbaum,* 214 App. Div. 525.) Concededly, cans of oil were put up and sealed by the defendant, and they were short in weight from that stamped on the cans by the defendant. This entitles the plaintiff to protection under the statute, and damages. (*City of New York* v. *Fredericks,* 206 N. Y. 618; *People* v. *Armour & Co.,* 176 App. Div. 161; *Finley* v. *Atlantic Transport Co.,* 220 N. Y. 249; *New York Rubber Co.* v. *Rothery,* 132 N. Y. 293; *Baker* v. *Manhattan Railroad Co.,* 118 N. Y. 553; *Friedgood* v. *Kline,* 67 Misc. Rep. 428; *Hoadley* v. *Dumois,* 11 Misc. Rep. 52; 155 N. Y. 630; *Whitney* v. *National Bank of Potsdam,* 45 N. Y. 303; *Dubois* v. *Hermance,* 56 N. Y. 673.) The cause of action set forth in the complaint can be either for express warranty, implied warranty or negligence. (*Ferguson* v. *Knetter,* 204 N. Y. 505; *Fairbanks Knitting Co.* v. *Metzger,* 118 N. Y. 260.)

HISCOCK, Ch. J. This appeal involves a challenge to the sufficiency of the complaint. The substantial and pertinent allegations of that pleading are to the effect that the plaintiff, a dealer in groceries, oils, etc., purchased from an intermediate wholesale dealer certain containers of olive oil which had been put up and sold by the defendant; that the latter had placed a label upon each container representing that it contained one-fourth of a gallon of such oil whereas the contents were actually less than that amount; that plaintiff made his purchases in reliance

upon this label and representation and after they had been purchased inspectors of the Department of Farms and Markets discovered that he was offering for sale containers containing less than the amount of oil represented thereon and he was threatened with prosecution for the collection of penalties by reason of such facts; that he was compelled to employ counsel to defend himself against such threatened prosecution at a substantial expense and that in addition his reputation as a merchant was greatly damaged.

The plaintiff bases his claim to a recovery under these circumstances upon certain sections of the Farms and Markets Law (Cons. Law, ch. 69) of which those which are important may be summarized. Section 194 provides that in the case of such containers as these were "the net quantity of the contents of each container, shall be plainly and conspicuously marked, branded or otherwise indicated on the outside or top thereof." Section 188 provides: "No person * * * shall * * * knowingly deliver less of any * * * commodity or article of merchandise than the quantity he represents * * *. The delivery by any person of a lesser quantity of any commodity or article of merchandise than the quantity he represents is presumptive evidence of knowledge by such person that the quantity delivered was less than the quantity he represented." Section 196 is entitled, " Guaranty furnished by wholesaler, jobber or manufacturer," and provides: " The name appearing on the container and the marking as provided by next to the last preceding section [section 194] shall be deemed to constitute a guaranty."

The first question which we encounter is the one whether the plaintiff by his complaint has attempted to state a cause of action, exclusively based on the theory of a warranty, it being claimed by the defendant that he cannot succeed on such a theory because of lack of privity between him and the defendant, his purchases having been made not from the latter but from an intermediate

dealer.  While there is considerable basis for the claim that plaintiff did attempt to state such a cause of action and did with much frequency apply the terms "warrant" and "warranty" to the representations placed by defendant on the containers, I think that this was due to a confused and inexact use of words rather than to an intent to confine his cause of action to a technical theory of warranty.  The complaint does set forth with fair accuracy and completeness the facts upon which plaintiff relies and •I believe that the words referred to when interpreted in the light of all of the allegations of the complaint are to be construed as alleging that the defendant stated or represented for the purposes of sale within the statute that the containers held a certain amount of oil.  It may be that under the provisions of section 196 already referred to that " The name appearing on the container and the marking as provided  *  *  *  shall be deemed to constitute a guaranty " an action might be based upon warranty.  But no reference is made to this section in support of the complaint and, therefore, its provisions do not tend to create any inference that the pleader was trying to state a cause of action in warranty rather than one based generally on a violation of the provisions which have been summarized.

Placing this construction upon the complaint we come to the second and more important question whether the statute confers a right of action upon an ultimate purchaser against the person who originally prepared for market and sold the containers with false labels or statements of their contents, even though there were intermediate dealers and no privity between the last purchaser and the first vendor.  Of course no one doubts that the statute by express provision might give to an ultimate purchaser of falsely labeled containers however remote a right of action against the person who violated the statute by marketing them with false labels  In the absence of such express provision, the question becomes

one of the intent of the Legislature in passing the statute. If it was its intent to impose the duty defined in the provisions of a statute for the benefit of the general public and any member thereof who, as in this case, might be misled by false labels then, as we shall see, a right of action would be raised in behalf of such purchaser who had been injured by violation of the duty. It seems to me to be obvious that such was the intent of the Legislature in adopting this statute.

As one of its first provisions the Farms and Markets Law, of which the provisions which we have quoted are part, declares that "The production, manufacturing, marketing, storing and distribution of food, and of all the instrumentalities used in the production thereof * * * are matters of public interest and proper subjects for investigation, encouragement, development and regulation by the State to secure an abundant supply of pure and wholesome food, to protect the health of the inhabitants of the State, to secure the exchange of such food and instrumentalities upon a fair basis * * * to prevent frauds in the traffic therein." So here at the very outset we find a declaration, which really was almost unnecessary in view of the character of the statute, that it was for the protection of the " inhabitants of the State." Then many of the articles which follow this declaration deal solely with the subject of foods and the particular article in question associates with the provisions which we have quoted other provisions dealing with that subject. Thus under any sensible interpretation it clearly appears that in the enactment of the statute as a whole the Legislature had in mind the purpose of protecting the members of the public from fraud and misrepresentation in the character of foods and also in the quantities of foods and allied commodities which they might purchase which was all a matter of general concern. The provision of section 196 to which we have referred, whether it furnishes a basis for a

technical action upon warranty or not, does indicate an intent that the duty and responsibility of a jobber or manufacturer should go with the article which he was labeling and marketing and follow it down through the line to the member of the public who finally purchased it for consumption or use. In fact, if the Legislature did not intend by these provisions to impose a duty upon the manufacturer which should persist in favor of an ultimate purchaser independent of any direct relation or privity the statute would be largely emasculated of possible benefits, for a purchaser of a falsely labeled container would have a right of action under ordinary principles of law against his immediate vendor. We ought not to assume that the Legislature intended to limit the duties of those violating such provisions as these by any technical rules of contractual privity but that it was intended to impose a broad and far-reaching duty which would be for the benefit of those general consumers who would be the real sufferers in health or pocket if the statute was violated. (*Glanzer* v. *Shepard,* 233 N. Y. 236; *Martin* v. *Herzog,* 228 N. Y. 164.) The fact that penalties are ordained for violations of course furnishes no argument against this conclusion. Civil responsibility and public punishment by common usage have long since been established as appropriate and complementary associates.

Holding then that this statute was passed for the benefit and protection of the general public and that it imposed upon one like the defendant a duty to the public and each member thereof, it is as we have already indicated well settled that such an one who has suffered from a disregard and violation of the duty has a cause of action for his damages against the one who has disregarded his duty. From the duty and its violation there is implied a cause of action in favor of the one for whose benefit the duty was imposed and who has

30

been injured by its violation. No element of ordinary negligence is essential. Violation becomes actionable default.

This rule is so general and well established that it is not subject to debate or question and only a few authorities need be cited which affirm and apply it. So far as concerns text books it has been stated in Cooley on Torts (Vol. 2 [3d ed.], p. 1408) " it is sufficient to say of the authorities that they recognize the rule as a general one that when the duty imposed by the statute is manifestly intended for the protection and benefit of individuals, the common law, when an individual is injured by the breach of the duty, will supply a remedy if the statute gives none." (See, also, 1 Shearman & Redfield ' on Negligence [6th ed.], secs. 13, 13-a.) In our own court it was said in *Willy* v. *Mulledy* (78 N. Y. 310) where a statute providing for fire escapes had been violated: " Here was, then, an absolute duty imposed upon the defendant by statute to provide a fire-escape, and the duty was imposed for the sole benefit of the tenants of the house, so that they would have a mode of escape in case of a fire. For a breach of this duty causing damage, it cannot be doubted that the tenants have a remedy. It is a general rule, that whenever one owes another a duty, whether such duty be imposed by voluntary contract or by statute, a breach of such duty causing damage gives a cause of action," and to like effect *Pauley* v. *S. G. & L. Co.* (131 N. Y. 90). In *Amberg* v. *Kinley* (214 N. Y. 531) where this subject was discussed and the authorities reviewed it was said: " Whether a statute gives a cause of action to a person injured by its violation, or whether it is intended as a general police regulation, and the violation made punishable solely as a public offense must to a great extent depend on the purview of the Legislature in the particular statute and the language which they have there employed," and in that case it

was held that failure to observe a statute relating to fire escapes gave a cause of action to one injured by such failure. (See, also, *Texas & Pacific Ry. Co.* v. *Rigsby,* 241 U. S. 33, 39.)

While it is true that some or all of the cases last cited were actions to recover for personal injuries, we see no reason to differentiate those cases from one like the present in the application of this general rule. In principle it makes no difference whether the person seeking damages has been injured in his person or in his property rights in the application of a statute which was passed for the purpose of protecting him against the violation complained of, and the following cases, in which the rule was directly or indirectly applied, did not spring out of personal injuries. (*Meshbesher* v. *Channellene Oil, etc., Co.,* 107 Minn. 104; *Mazetti* v. *Armour & Co.,* 75 Wash. 622; *Tomlinson* v. *Armour & Co.,* 75 N. J. Law, 748; *Trafton* v. *Davis,* 110 Me. 318; *Ives* v. *Welden,* 114 Iowa, 476.)

Finally we come to the items of damages alleged by plaintiff and which it is said are not recoverable as the proximate result of defendant's violation even though under other circumstances a cause of action might exist. We pay no attention to the very general and figurative allegation of damages claimed to have been suffered by plaintiff in his business as the result of his purchase of the falsely labeled containers. That claim does not seem to be urged with any emphasis upon this appeal and if pressed on the trial it can be properly disposed of. But we see no reason why plaintiff should not be allowed to establish if he can his expenditure for legal services employed for the purpose of extricating him from a liability for penalties based on the fact that he had these falsely labeled containers in his possession. By reason of his position he was threatened with prosecution for penalties and it certainly was a matter of reasonable

prudence to employ counsel either to defend against or procure an adjustment of this claim and thus his reasonable expense in that respect became a proximate result of defendant's violation of the statute and default.

We think that the order appealed from should be affirmed, with costs.

The first question certified is answered in the affirmative. The other questions are not answered.

CARDOZO, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur; LEHMAN, J., absent.

Order affirmed, etc.